James D. Holman, Esq.
THOMSEN HOLMAN WHEILER, PLLC
2635 Channing Way
Idaho Falls, ID  83404
Telephone  (208) 522-1230
Fax  (208) 522-1277
holman@thwlaw.com

Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| MICHAEL NORTON and STEVEN DELACUESTA, | ) ) ) | Case No. 4:14-cv-486-BLW |
| Plaintiffs, | ) ) | **PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION** |
| v. | ) ) ) | **FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS'** |
| ASSURED PERFORMANCE NETWORK, dba ASSURED PERFORMANCE NETWORK, INC., and SCOTT BIGGS, | ) ) ) ) | **MOTION FOR SUMMARY JUDGMENT (Doc. 25)** |
| Defendants. | ) ) ) | |

COME NOW Plaintiffs Michael Norton and Steven Delacuesta by and through counsel of record and submit this memorandum in support of their Cross-Motion for Summary Judgment, and Response to Defendants' Motion for Summary Judgment.

## I.  SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

1 -   PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 25)

movant is entitled to judgment as a matter of law." FED.R.CIV.P.56(c) (2008). Summary judgment is not proper if material factual issues exist for trial. *Warren v. City of Carlsbad,* 58 F.3d 439,441 (9th Cir. 1995).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed. 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

The Court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). However, the nonmoving party must set forth "specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e) (2008). Where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotation marks omitted).

## II. <u>NORTON AND DELACUESTA WERE EMPLOYEES UNDER THE FAIR LABOR STANDARDS ACT</u>

Historically, courts used the common law control test to determine whether a worker was an employee. Congress rejected that test in drafting the Fair Labor Standards Act. *See Walling v. Portland Terminal Co.*, 330 U.S. 148, 150-51 (1947). The FLSA definition of "employ" is much broader than the common law definition and includes "to suffer or permit to work." 29 U.S.C. § 203(g). The "suffer or permit" standard was specifically designed to ensure as broad a scope of

2 -    PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY
        JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
        JUDGMENT (Doc. 25)

statutory coverage as possible. *U.S. v. Rossenwasser*, 323 U.S. 360, 362-63 (1945) ("A broader or more comprehensive coverage of employees . . . would be difficult to frame."). The Supreme Court "has consistently construed the Act 'liberally to apply to the furthest reaches consistent with congressional direction,' recognizing that broad coverage is essential to accomplish the [Act's] goal . . . ." *Tony & Susan Alamo Found. V. Sec'y of Labor*, 471 U.S. 290, 296 (1985) (citations omitted). An "entity 'suffers or permits' an individual to work if, as a matter of economic reality, the individual is dependent on the entity." *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996); *see also Real v. Driscoll Strawberry Associates, Inc.*, 603 F.2d 748, 754 (9th Cir. 1979) (citations omitted). An individual's status as employee or independent contractor depends on the circumstances of the entire activity. *Real*, 603 F.2d at 754. The goal is to determine whether the worker is economically dependent on the employer (and thus its employee) or is really in business for him or herself (and thus its independent contractor). *Id.* "It is dependence that indicates employee status." *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1311 (5th Cir. 1976). Courts have developed a multi-factor "economic realities" test to determine whether a worker is an employee or an independent contractor under the FLSA. *Tony & Susan Alamo*, 471 U.S. at 301. Though not mechanically applied, those factors typically include:

1.   the degree of the alleged employer's right to control the manner in which the work is to be performed;
2.   the alleged employee's opportunity for profit or loss depending upon his managerial skill;
3.   the alleged employee's investment in equipment or materials required for his task, or his employment of helpers;
4.   whether the service rendered requires a special skill;
5.   the degree of permanence of the working relationship; and
6.   whether the service rendered is an integral part of the alleged employer's business.

3 -   PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 25)

*Real*, 603 F.2d at 754. "[T]he economic realities of the relationship govern, and the focal point is whether the individual is economically dependent on the business to which he renders service or is, as a matter of economic fact, in business for himself." *Baker v. Flint Eng'g & Coinstr. Co.*, 137 F.3d 1436, 1440 (10th Cir. 1998). "Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA. Furthermore, the subjective intent of the parties to a contract cannot override the economic realities reflected in the factors described above." *Real*, 603 F.2d at 755.

In *Real*, plaintiffs were laborers who worked in strawberry fields owned or leased by the defendants. *Id.* at 750. The defendants required all workers to sign lengthy "sublicense" agreements, which repeatedly referred to the laborers as independent contractors. Even the plaintiffs referred to themselves as independent contractors in their original complaint. Plaintiffs later amended their complaint to allege that they were actually employees. *Id.* The district court granted the defendants' motion for summary judgment, finding that the plaintiffs or "sublicensees" were independent contractors, not employees. The court of appeals reversed, citing the economic realities of the situation based on the factors utilized by the Supreme Court.

In reversing the district court's decision, the court of appeals applied the facts to the factors the Supreme Court used in *Bartels v. Birmingham*, 332 U.S. 126, 130, 67 S.Ct. 1547, 1550 (1947). First, the court of appeals said the record showed the defendants possessed substantial control over important aspects of plaintiffs' work, including when to plant, when to fertilize, when to harvest, when to weed, and the right to fire plaintiffs. *Id.* at 751-52. The court of appeals was unpersuaded by the fact that plaintiffs could hire helpers. *Id.* at 755. Next, the court said plaintiffs' opportunity

for profit or loss depended more on defendants' managerial skills than their own because defendants controlled which variety of strawberries were planted and where, which strawberries passed quality control, and how much plaintiffs were paid for their labor. *Id.* The plaintiffs were completely economically dependent on defendants because they only worked for defendants. *Id.* at 756. The court also cited the minimal investment plaintiffs made in tools compared to the much larger investment defendants made in heavy equipment, land, and supplies. *Id.* at 755. Finally, the court concluded the work required no special technical knowledge or skill, and was integral to defendants' business. *Id.* Based on that analysis of the law and facts, the court of appeals was "convinced . . . the district court erred in ruling as a matter of law that DSA is not an employer of the appellants." *Id.* at 756.

In this case, Scott Biggs controlled every aspect of Michael Norton's and Steven Delacuesta's work. Both Michael Norton and Steven Delacuesta testified at deposition that Scott Biggs dictated what had to be done; he frequently pulled them off of one task in order to complete some other more pressing task; or he instructed them to allow his foreman to pull them off of one task to complete another. *Aff. of Holman*, Exhibit A at 23:18-24, 45:13-19; *Aff. of Crawford* Exhibit A at 27:23-28:5; Exhibit B at 10:3-11:4. Scott Biggs controlled Plaintiff's schedule, including preventing them from taking time off. *Aff. of Holman*, Exhibit A at 38:19-40:16. As soon as they arrived on the ranch, Biggs put them to work on tasks other than the primary task for which Biggs claimed they were hired, installing an irrigation system. *Aff. of Crawford*, Exhibit B at 12:7-13. Instead of installing the irrigation system, Scott Biggs put them to work planting trees, watering the lawn, killing weeds, mowing, building fences, construction, painting, and in Norton's case, cooking. *Aff. of Holman*,

5 -   PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY
       JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
       JUDGMENT (Doc. 25)

Exhibit A at 22:1-5; *Aff. of Crawford*, Exhibit A at 28:6-14; Exhibit B at 14:19-16:2; 19:20-20:3; 9:13-20.

Further evidence of Scott Biggs's control over the work on the ranch is found in his 25 to 30 daily calls to Michael Norton on the cellular telephone Biggs gave Norton. *Aff. of Holman*, Exhibit A at 24:16-19. When he was in Idaho, Scott Biggs was even more controlling, constantly looking over Plaintiffs' shoulders and "barking orders." *Aff. of Holman*, Exhibit A at 24:16-25:10; *Aff. of Crawford*, Exhibit B at 15:23-16:2. It was Scott Biggs's overbearing demeanor that caused Michael Norton to decide not to install the sprinkler system because he knew no matter what he did or how well he did it, it was not going to be good enough for Biggs. Even though Scott Biggs was not always at the ranch, he nevertheless controlled the manner in which Norton and Delacuesta performed their work. *Aff. of Crawford*, Exhibit B at 14:12-18; 19:16-24; 15:21-16:2. Because Scott Biggs controlled the manner in which Michael Norton and Steven Delacuesta performed their work, they are employees.

Norton and Delacuesta did not have the opportunity for profit or loss depending on their managerial skill. Norton received $500 per week, and Delacuesta earned $400 per week. *Aff. of Biggs* at ¶¶ 7-8; *Aff. of Crawford*, Exhibit A at 14:23-15:6. Neither had the opportunity to earn more or less than this amount no matter their efficiency or diligence. Their managerial skills were irrelevant to their opportunity for profit or loss. Plaintiffs easily satisfy the second factor because they earned a set weekly pay regardless of their managerial skills.

Neither Norton nor Delacuesta was an independent contractor because, when compared to Defendants, neither made a significant investment that supports a business as a business, nor did

either Plaintiff employ helpers to complete the work they performed for Defendants. In *Real*, the court of appeals overturned the determination that the plaintiffs were independent contractors in part because the investment they made in tools and materials was "minimal" compared to that of the defendants. *Real*, 603 F.2d at 755. Even a sizeable investment may be insufficient to remove a worker from employee status if the investment is small compared to the employer's. The Tenth Circuit determined that rig welders' investments in equipped trucks costing between $35,000 and $40,000 did not indicate that the rig welders were independent contractors when compared to the employer's much larger investment in its business. *Baker*, 137 F.3d at 1442.

Plaintiffs' investment here was minimal in nature and magnitude compared to the tools, vehicles, equipment, real estate, livestock and cabins Defendants invested in. Neither Plaintiff made any investment that would further a business's capacity to expand, reduce its cost structure, or extend the reach of the potential market as an independent contractor. Michael Norton brought with him a hammer, nail bags, and two saws. *Aff. of Crawford*, Exhibit A at 31:3-8; *Aff. of Norton* at ¶ 15. Steven Delacuesta brought a tool bag containing hammers, wrenches, pliers, channel locks and crowbars. *Aff of Delacuesta* at ¶ 16. Meanwhile, Scott Biggs supplied not only hand tools, but tractors, Rhinos, and other ranch vehicles. *Aff. of Norton* at ¶ 13; *Aff. of Delacuesta* ¶ 14; *Aff. of Crawford*, Exhibit A at 21:10-19; 26: 24-27:5. In addition, Biggs invested in materials and supplies as well as livestock, seed, and the ranch itself. Even the wood stain that Michael Norton used belonged to Biggs. *Aff. of Norton* at ¶¶ 13, 14; *Aff. of Delacuesta* ¶ 15. Biggs also supplied groceries and supplies from the hardware store. *Aff. of Crawford*, Exhibit A at 29:7-21. Plaintiffs used Defendants' vehicles and other equipment to complete the services they performed. *Aff. of Crawford*,

7 -   PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY
      JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
      JUDGMENT (Doc. 25)

Exhibit A at 26:24-27:13; 36:14-37:5. Plaintiffs did not even use their own vehicle to travel to or from Idaho; instead they traveled from California with Scott Biggs in his truck and returned to California in a car Scott Biggs rented. *Aff. of Scott Biggs* at ¶ 10, 15; *Aff. of Crawford*, Exhibit B at 9:4-8; *Aff. of Holman*, Exhibit A at 42:13-21. The facts here are similar to those in *Lauritzen* where the workers (whom the court found were not independent contractors) provided their own gloves, but the employer provided the farm equipment, land, seed, fertilizers, and living quarters. *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987). In short, Norton's and Delacuesta's investment was minimal compared to that of Scott Biggs.

Neither Delacuesta nor Norton hired helpers. *Aff. of Norton* at ¶ 16; *Aff. of Delacuesta* ¶ 17. In *Real* the court did not consider the plaintiffs independent contractors even though they hired their own helpers. 603 F.2d at 755. In this case, Norton was not even Delacuesta's supervisor, much less his employer. *Aff. of Crawford*, Exhibit B at 15:10-13; *Aff. of Holman*, Exhibit A at 45:25-46:16. Biggs hired both Norton and Delacuesta and neither hired helpers. Norton and Delacuesta made no investment in the equipment or materials required for the tasks Biggs assigned and neither hired helpers to complete the work. They should therefore not be considered independent contractors.

The work Norton and Delacuesta performed required no special skills. A worker's business skills, judgment, and initiative, not his or her technical skills, will aid in determining whether the worker is economically independent. *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1060 (2d Cir. 1988). Plaintiffs performed general labor and construction work such as staining, cleaning, washing windows, dragging hoes, tearing out sheetrock, moving furniture, planting trees, cutting grass, watering grass and moving rocks. *Aff. of Crawford*, Exhibit A at 28:6-14. None of these tasks

8 -   PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY
      JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
      JUDGMENT (Doc. 25)

required business skills, judgment, or initiative. *Aff. of Norton* at ¶ 17; *Aff. of Delacuesta* ¶ 18. Installing a sprinkler system might require some technical skills, but they did not do that, and using those skills is not by itself indicative that workers are in business for themselves. *Aff. of Biggs* at ¶ 15; *Aff. of Crawford*, Exhibit B at 10:11-11:4; *see Superior Care*, 840 F.2d at 1060. Thus, Norton and Delacuesta are not independent contractors because they performed no work that required special skills, much less business skills or judgment.

Norton and Delacuesta's employment was not pegged to a job certain, but was open-ended. They worked for as long as Biggs wanted them to work. On the drive from California to Idaho, Biggs told Norton and Delacuesta that "it's a long walk home" if either quit or was fired. *Aff. of Crawford*, Exhibit A at 33:1-10; *Aff. of Holman*, Exhibit A at 43:11-17. The most accurate way to describe the working relationship between Plaintiffs and Biggs is at-will employment for as long as Biggs cared to employ them. A worker's lack of a permanent or indefinite relationship with an employer is indicative of independent contractor status if it results from the worker's own independent business initiative. *Superior Care*, 840 F. 2d at 1060-61. The lack of permanence here resulted from Bigg's temper, not Norton's or Delacuesta's business initiative.

Finally, Norton and Delacuesta performed services that were integral to Biggs's business. Biggs ran a guest ranch. Biggs ordered Norton and Delacuesta to perform tasks because Biggs wanted them completed before his guests arrived. *Aff. of Crawford*, Exhibit B at 14:19-15:9. All of Plaintiffs' work was to improve the guest ranch. Norton even cooked for some of the guests on at least one occasion. *Aff. of Crawford*, Exhibit A at 33:11-34:9. At times the ranch foreman pulled Delacuesta off one task to assist with planting or building fences. *Aff. of Crawford*, Exhibit A at

20:1-10, Exhibit B at12:19-13:3. Plaintiffs worked on the grounds and cabins to enhance the guests' experience, also integral to Defendants' business.

The ultimate inquiry under the FLSA is whether the worker is economically dependent on the employer or truly in business for himself. If the worker is economically dependent on the employer, then he is an employee. If the worker is in business for himself, then the worker is an independent contractor. Contrary to Defendants' assertions, the economic realities of this situation establish that Plaintiffs were dependent on Defendants in every way, including room and board. As the *Real* court stated, "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Real*, 603 F.2d at 754. A worker who is "economically dependent" on an employer is also one who is "suffered or permitted" to work and therefore, an employee. Scott Biggs's label is irrelevant. Plaintiffs were employees in every sense of the word. Plaintiffs therefore request that the Court deny Defendants' motion for summary judgment and grant their cross-motion for summary judgment on the question of whether they were employees.

### III.  **PLAINTIFFS WERE EMPLOYEES UNDER IDAHO LAW**

Plaintiffs were also employees under Idaho law and therefore entitled to unpaid wages. Idaho law provides that any individual who is "suffered or permitted to work" by an employer is an employee. I.C. § 45-601. Moreover, Idaho uses a four-pronged test to determine employee/independent contractor status:

1.  there must be evidence of the employer's right to control the employee;
2.  the method of payment, i.e., whether the employer withheld taxes;
3.  whether the master or servant furnishes major items of equipment; and
4.  whether either party has the right to terminate the relationship at will, or whether one is liable to the other in the event of a peremptory termination.

10 -   PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 25)

*Livingston v. Ireland Bank*, 128 Idaho 66, 69, 910 P.2d 738, 741 (1995). The factors should be balanced to determine the relative weight and importance of each. *Id.*

It is undisputed that Biggs controlled Norton and Delacuesta in the work they completed, the hours they worked, and the time they were allowed off. *Aff. of Holman*, Exhibit A at 23:18-24, 45:13-19; *Aff. of Crawford* Exhibit A at 27:23-28:5; Exhibit B at 10:3-11:4. Biggs monitored their work closely either in person or over the telephone and directed them in not only the end result of the work, but the methods used. *Aff. of Holman*, Exhibit A at 24:16-19; *Aff. of Holman*, Exhibit A at 24:16-25:10; *Aff. of Crawford*, Exhibit B at 15:23-16:2. The only free time Biggs allowed Plaintiffs was the afternoon of July 4. *Aff. of Holman*, Exhibit A at 38:19-39:18. He did not even allow them time off on weekends. *Aff. of Holman*, Exhibit A at 40:1-16. Biggs had the right to control Norton and Delacuesta and did control them while in his employ.

Biggs did not withhold taxes. However, this was a tax dodge, not an indicator of independent contractor status. Biggs also furnished major items of equipment. Biggs brought a Rhino from California to be used on the ranch. Biggs also furnished tractors, tools, vehicles, and materials for Plaintiffs to use in performing their work. *Aff. of Norton* at ¶ 13, 14; *Aff. of Delacuesta* ¶ 14, 15; *Aff. of Crawford*, Exhibit A at 21:10-19; 26: 24-27:5.

Either party had the right to terminate the relationship at will, without liability to the other, and they did just that. Biggs fired Norton. *Aff. of Norton* at ¶ 23. Delacuesta voluntarily left with Norton. *Aff. of Delacuesta* at ¶ 23. Thus, the parties had the right to terminate the relationship without liability to the other.

Just as under the FLSA, Idaho law establishes that Norton and Delacuesta were employees,

11 -   PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY
       JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
       JUDGMENT (Doc. 25)

not independent contractors. The Court must therefore concluded that Michael Norton and Steven

Delacuesta are employees under Idaho law.

## IV.  **CONCLUSION**

The record establishes that Michael Norton and Steven Delacuesta were employees, not

independent contractors. Plaintiffs therefore request that the Court deny Defendants' motion for

summary judgment and grant Plaintiff's cross-motion for summary judgment.

DATED this 26th day of October, 2015.


THOMSEN HOLMAN WHEILER, PLLC


By:      _____/s/_____
         James D. Holman, Esq.


12 -    PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY
        JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
        JUDGMENT (Doc. 25)

## CERTIFICATE OF SERVICE

I hereby certify that on the 26th day of October, 2015, the within and foregoing **PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** was electronically filed with the Clerk of the Court using the District Court's CM/EMF filing system, and upon such filing the CM/EMF registered participants in this case were served by electronic means.

J. Nick Crawford  jnc@brassey.net

THOMSEN HOLMAN WHEILER, PLLC

By: _____/s/_____
James D. Holman, Esq.

JDH:clm
9965\PLEADINGS\011 Brf ISO MSJ

13 -   PLAINTIFFS' BRIEF IN SUPPORT OF CROSS-MOTION FOR SUMMARY
       JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY
       JUDGMENT (Doc. 25)